

**Unanimous Written Consent of Board of Directors
in Lieu of Special Meeting of Aghorn Operating, Inc.**

In accordance with section 21.415 of the Texas Business Organizations Code (the "BOC") and the provisions of the applicable By-Laws, the undersigned, as the Directors of Aghorn Operating, Inc., a Texas corporation (the "Corporation"), hereby take the following actions and adopt the following resolutions to have the same force and effect as if adopted at a specially called meeting of the Board of Directors of the Corporation:

WHEREAS, the Corporation has been engaged in discussions with the United States Department of Justice ("Government") to resolve allegations in the Superseding Indictment in the case styled *United States v. Aghorn Operating, Inc., Kodiak Roustabout, Inc., and Trent Day*, Case No. 22-CR-49, in the U.S. District Court for the Western District of Texas (the "Referenced Case");

WHEREAS, in order to resolve such discussions, it is proposed that the Corporation enter into a Plea Agreement (the "Agreement") with the Government and the Corporation acknowledges and admits the Factual Basis for Plea set forth in the Agreement; and

WHEREAS, the Corporation's counsel has advised the Directors of the Corporation of its rights, possible defenses, the possible sentencing parameters, and the consequences of entering into such Agreement with the Government;

THEREFORE, the Directors hereby RESOLVE that:

1. The Corporation (a) acknowledges the filing of the one-count Information charging the Corporation with a misdemeanor violation of negligent endangerment in violation of 42 U.S.C. §7413(c)(4); (b) waives indictment on such charge; (c) acknowledges Count Five of the Superseding Indictment charging the Corporation with a misdemeanor violation of certain OSHA safety standards pursuant to 29 U.S.C. §666(e); (d) enters into the Agreement with the Government; (e) agrees to a total fine of $1,000,000.00 (the "Fine"), an $800 monetary assessment, and a two-year term of probation under the terms of the Agreement; and (f) admits the Court's jurisdiction over the Corporation and the subject matter of such action and consents to a judgment therein in accordance with the terms of the Agreement.

2. The Corporation accepts the terms and conditions of the Agreement, a true and correct copy of which is attached hereto as Exhibit "A," including but not limited to the Corporation's Waiver of Statutory and Constitutional Rights as set forth therein.

3. The Corporation acknowledges and admits the Factual Basis for Plea set forth in the Agreement and acknowledges that the Fine may be recovered from the Corporation pursuant to the terms of the Agreement.

4. Frosty Gilliam, Jr., in his capacity as President of the Corporation, is hereby authorized, empowered and directed, on behalf of the Corporation, to execute the Agreement in the form attached hereto as Exhibit "A."

5.  Frosty Gilliam, Jr., in his capacity as President of the Corporation, is further authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions.

6.  The Corporation further authorizes its attorneys, David Gerger, Matt Hennessy and/or Marla Thompson Poirot, to appear in Court for the plea and sentence and to enter the plea on behalf of the Corporation.

7.  All of the actions of the Corporation's authorized signatory, Frosty Gilliam, Jr., which actions would have been authorized by the foregoing resolutions, except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved and adopted as actions on behalf of the Corporation.

8.  The actions taken by this Consent shall have the same force and effect as if taken at a special meeting of the Board of Directors of the Corporation, duly called and all corporate formalities for the authorizations set forth herein have been observed.

9.  This Consent may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed one and the same document. This Consent may be executed by facsimile and/or electronic signature.

10. The secretary of the Corporation hereby is directed to file this Consent in the minute book of the Company.

The undersigned constitute the entire board of directors of Aghorn Operating, Inc. entitled to vote on the action.

IN WITNESS WHEREOF, this Consent has been signed to be effective as of the 9th day of April, 2025.

**DIRECTOR:**

_____
FROSTY GILLIAM, JR.

EXHIBIT "A" TO UNANIMOUS WRITTEN CONSENT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) AGHORN OPERATING INC. | NO. 7:22-CR-00049-DC |

**PLEA AGREEMENT**
**[RULE 11(c)(1)]**

The Acting Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice ("Government") and Defendant Aghorn Operating Inc. ("Defendant"), enter into the following plea agreement in this cause, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

**1. Agreement to Plead Guilty:**

Defendant agrees to plead guilty to the sole count of the attached Criminal Information (Attachment A), which charges Defendant with 42 U.S.C. § 7413(c)(4) (negligent endangerment under the Clean Air Act). And Defendant agrees to plead guilty to Count Five of the Superseding Indictment, which charges Defendant with 29 U.S.C. § 666(e) (willful violation of certain Occupational Safety and Health (OSH) Act safety standards, leading to the death of an employee).

If the Court accepts this 11(c)(1)(C) agreement and imposes the sentence contemplated, the Government agrees to move to dismiss the remaining charges against Defendant after the sentencing hearing and will not seek additional charges against Defendant for conduct of which the Government is aware on the date this agreement is executed.

**2. Penalty:**

The offenses to which Defendant is pleading guilty carry the following penalties:

Sole Count the Criminal Information:
42 U.S.C. § 7413(c)(4) – Negligent Endangerment

| Maximum Prison Term | None (Corporation) |
|---|---|
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | None |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $500,000, per 18 U.S.C. § 3571(c)(4) |
| Monetary Assessment | $400 |
| Amount of Restitution | None, based on parties' understanding[1] |
| Forfeiture | None |

Count Five in Superseding Indictment:
29 U.S.C. § 666(e) – OSH Act

| Maximum Prison Term | None (Corporation) |
|---|---|
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | None |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $500,000, per 18 U.S.C. § 3571(c)(4) |
| Monetary Assessment | $400 |
| Amount of Restitution | None, based on parties understanding |
| Forfeiture | None |

**3. Factual Basis for Plea:**

The parties agree that—at all times relevant to the charges addressed in this plea agreement—the information in the following paragraphs ((a) through (k)) was true. The parties also agree that the acts and knowledge attributed to Defendant in those paragraphs were carried

---

[1] The parties have conferred and concluded that the victims in this case have been justly compensated for the harm caused by the crimes that Defendant is pleading to, through the civil tort and workers' compensation process. In addition, complication, and prolongation of the sentencing process would result from fashioning an order of restitution, which would outweigh the need for (likely duplicative) restitution to the victims in this case. See 18 U.S.C. § 3663(a)(1)(B)(ii).

2

out by and known by Defendant's agents and assigns, acting within the scope of their agency and/or employment.

(a)     Defendant was run by managers with extensive oilfield experience. They had work histories that involved oilfield operations, safety, and safety regulations. Many of Aghorn's non-supervisory employees were also experienced oilfield workers, who knew about oilfield operations, safety, and safety regulations. That corporate experience included both academic and classroom training, as well as years in the field. Through experience, Aghorn managers knew the hazards of operating in a sour gas region where there are high concentrations of hydrogen sulfide (H2S), which escapes easily from produced water. Aghorn managers also knew that there were regulations, including federal regulations under OSH Act, which addressed how to make operations safer when employees worked where breathing hazards are present or are likely to be present.

(b)     Aghorn managers and supervisors oversaw work at the Foster D Section 8 Water Flood Station (the "Station"), which was located in Odessa, Texas, within the Western District of Texas. Some managers and supervisors had run the Station themselves and knew it well.

(c)     At the Station, Aghorn injected produced water into oil-bearing geologic formations to (a) dispose of produced water and (b) lengthen the productive life of those formations. When the Station was not operating, Aghorn had to store produced water or ship it off-site for disposal.

(d)     If the produced water went uncontained, H2S gas could come out of the produced water into the surrounding air. H2S is an extremely hazardous substance—at high concentrations, it can cause unconsciousness and death.

(e)     In October 2019, the Station consisted of, among other things, two large tanks

(holding thousands of barrels of produced water), three injection pumps (one of which had been removed for replacement or reconditioning), a disabled system of stationary H2S monitors, and a control system in a control room. The Station as operated lacked sufficient ventilation to adequately disperse accidentally released H2S.

(f)  The injection pumps at the Station operated almost constantly and required frequent repairs. Sometimes, during normal repairs or maintenance of the injection pumps, H2S releases occurred, which affected workers or contractors, causing them to be sick.

(g)  The Station did not have a dedicated source of breathing air or emergency self-contained breathing equipment onsite. Aghorn did not have, and so had not implemented, a written respiratory protection program as required by the OSH Act. By law, such a program would have addressed selecting respirators, medically evaluating employees for respirator use, fit testing, procedures for respirator use in routine or reasonably foreseeable circumstances, respirator maintenance, respirator air quality and volume, employee training on hazards and the proper use of respirators, and procedures for regularly evaluating the effectiveness of such a program. See 29 C.F.R. § 1910.134(c)(1)(i)-(ix).

(h)  Gates to the Station were often left open during the workday or when pumpers were present onsite. The Station could run unattended, by programmed controls. If certain conditions were triggered, the controls would cause an alarm call to go out to the cellular phone of a responsible duty pumper or relief pumper. "Pumper" was the job title of someone who worked with pumps at oil wells and at oil well support facilities, like the Station. A "relief pumper" was a person who took on a regular pumper's duties from time to time.

(i)  In February 2019, Aghorn field employees and managers participated in training where they answered test questions confirming that "federal law" requires "protection" when

4

H2S concentration in the work environment reaches 10 ppm. Nevertheless, Aghorn caused operations to continue without following the applicable federal law, including regulations promulgated under the OSH Act that addressed respiratory protection and unacceptable air contaminant limits.

(j) On October 26, 2019, an injection pump broke, causing an automated alarm call to be made to relief pumper Jacob Dean. Dean went to the Station in response to the alarm. When he arrived, the Station's stationary monitors were inoperable, and no respirator was available for use. Dean entered the Station, was overcome by H2S gas, and died. At the time of his death, Aghorn had not implemented a written respiratory protection program, which was a requirement of federal law under the OSH Act. This failure to implement a written respiratory protection program was a cause of Jacob Dean's death.

(k) Later in the evening of October 26, 2019, Natalee Dean came to the Station looking for Jacob, and she was also overcome by H2S and died. Aghorn agents, acting within the scope of their agency and employment, had neglected to control H2S emissions and provide adequate safety systems, which negligence placed Natalee Dean in imminent danger of death.

**4. Defendant's Waiver of Statutory and Constitutional Rights:**

Defendant understands and acknowledges that by pleading guilty, Defendant is waiving the following constitutional and statutory rights:[2]

    (1) The right to plead not guilty and persist in that plea.

    (2) The right to a speedy and public jury trial.

    (3) The right to assistance of counsel at that trial and in any subsequent appeal of that trial.

---

[2] Where applicable to a corporate defendant.

5

 (4) The right to remain silent at trial.

 (5) The right to testify at trial.

 (6) The right to confront and cross-examine government witnesses.

 (7) The right to present evidence and witnesses on his or her own behalf.

 (8) The right to compulsory process of the court.

 (9) The right to be presumed innocent.

 (10) The right to a unanimous guilty verdict.

 (11) The right to appeal a guilty verdict.

In addition to giving up the rights described above, Defendant agrees to give up and waive the following:

<u>Additional Pretrial Motions:</u> Defendant understands that Defendant could raise issues and challenges by additional pretrial motion, including motions to suppress evidence and to dismiss the charges. By entering into this agreement and pleading guilty, Defendant agrees to give up all claims Defendant has made or might have made by pretrial motion and to the dismissal of any pending motions.

<u>Additional Discovery:</u> Defendant agrees to waive any claims Defendant may have now or may acquire later to any information possessed by the prosecution team that might be subject to disclosure under discovery rules, including, but not limited to, the Federal Rules of Criminal Procedure; the <u>Jencks</u> Act; local court rules; and court orders. Defendant waives any continuing discovery request and any additional discovery. Defendant also waives all rights to request from any federal department or agency any records relating to the investigation or prosecution of this case, including, but not limited to, any records that may be sought under the Freedom of Information Act (5 U.S.C. § 552) or the Privacy Act (5 U.S.C. § 552a).

Legal Fees and Expenses: Defendant stipulates that Defendant is not entitled to and shall not seek from the United States any attorney fees or other litigation expenses Defendant has incurred or will incur in connection with this prosecution.

### 5. Defendant's Waiver of Right to Appeal or Challenge Sentence:

In exchange for the concessions made by the Government in this agreement, Defendant voluntarily and knowingly waives the right to appeal the conviction or sentence on any ground, including any challenge to the constitutionality of the statute of conviction; any claim that Defendant's conduct fell outside the scope of the statute of conviction; any challenges to the determination of any period of confinement, monetary penalty or obligation, restitution order or amount, term of supervision and conditions; and any other claim based on rights conferred by 18 U.S.C. § 3742 or 28 U.S.C. § 1291.

This plea agreement is presented to the Court under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Under that rule, if the Court accepts the plea agreement, the sentence the parties have agreed to is binding on the Court. Id. Subject to this proviso, Defendant also voluntarily and knowingly waives any right to contest the conviction or sentence (or the way the sentence was determined) in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or any other provision of law. Consistent with principles of professional responsibility imposed on Defendant's counsel and counsel for the Government, nothing in this agreement precludes Defendant from raising a claim of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension in an appropriate forum

### 6. Advice of Counsel:

Defendant acknowledges reviewing with Defendant's counsel the merits of the charges and possible defenses that Defendant may have; the advantages and disadvantages of pleading guilty; the terms and meaning of the plea agreement; and the consequences of pleading guilty.

7

Defendant has discussed with Defendant's attorney the punishments and consequences of pleading guilty, understands that not all the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

**7. Sentencing Agreement Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:**

Under Rule 11(c)(1)(C), Defendant and the Government agree that the following specific sentence would be binding of the Court if the Court accepts this plea agreement:

- Defendant will plead guilty to the sole count of the Criminal Information, which charges Defendant with 42 U.S.C. § 7413(c)(4) (negligent endangerment under the Clean Air Act).

- Defendant will plead guilty to Count Five of the Superseding Indictment, which charges Defendant with 29 U.S.C. § 666(e) (willful violation of an OSH Act regulation, leading to the death of an employee).

- Defendant will pay a fine of $500,000 for each count, totaling $1,000,000.

- Defendant will pay a monetary assessment in the amount of $400 for each count, totaling $800.

- Defendant will be placed on probation for a period of two years, the terms of probation to include those standard conditions chosen by the Court and, in addition, Defendant shall:

    o Maintain and calibrate fixed H2S monitors, including inspecting those monitors at least every 90 days, repairing or replacing any found not to be working, and maintaining records of the inspections and any repairs at the locations listed in Attachment B.

    o Maintain warning signs of hazardous gas and no trespassing at all leases, including inspecting signage at least once a year and replacing any that become damaged or illegible.

    o Conduct H2S training for all employees at least once each calendar year by a third-party safety company including keeping sign in sheets and copies of training materials used.

    o Maintain and implement a written respiratory policy in compliance with the OSH Act, including training at least once per year and regular evaluation of the policy's effectiveness.

8

- Maintain ventilation at the pumphouse at the Foster D lease – as currently maintained by modifications to the structure and/or ventilation fans.

- Within the first six months of probation, Defendant will provide the Court with a catalog of the safety and environmental compliance improvement steps it has taken since October 26, 2019. Then, at 6-month intervals for the remainder of probation, Defendant will report to the Court what measures it has taken to prevent backsliding or to improve on that standard.

### 8. Corporate Authorization:

Defendant represents that it is authorized to enter into this plea agreement. Defendant has authorized its attorneys to sign the required papers and appear in court for the plea and sentence. At the time of signing, Defendant shall provide to the Government a written corporate resolution, to be filed with the U.S. District Court for the Western District of Texas, certifying that Defendant is authorized to enter into and to comply with this plea agreement. The resolution shall further certify that Defendant authorized these actions and that all corporate formalities for such authorizations have been observed. The resolution shall be filed on the docket prior to Defendant's entry of plea.

### 9. Breach of Agreement:

Prior to sentencing, if Defendant violates any term of this plea agreement, the Government will be released from its obligations under this plea agreement and may, in its sole discretion:

(1) move to set aside Defendant's guilty plea and proceed on charges previously filed and any additional charges not time barred;

(2) at sentencing or in any prosecution, use against Defendant any statements or information Defendant provided as part of the guilty plea;

(3) advocate for any sentence up to and including the statutory maximum; and/or

(4) decline to seek a reduced sentence.

Defendant understands and agrees that Defendant's breach of this plea agreement will not

entitle Defendant to withdraw a guilty plea already entered. However, if Defendant withdraws from this agreement, Defendant agrees and understands that the factual basis set out in this plea agreement (1) may be used against Defendant in the Government's direct case and (2) sets forth facts that are true, accurate, admissible at any trial or hearing, and not subject to challenge under Federal Rule of Evidence 410(a) or Federal Rule of Criminal Procedure 11(f).

**10. Totality of Agreement:**

Defendant understands that this Agreement binds only the office prosecuting this case, which is the Environment and Natural Resources Division of the United States Department of Justice. When this Agreement uses the term Government, it refers only to the Environment and Natural Resources Division of the United States Department of Justice. This plea agreement sets forth the entire agreement between the Environment and Natural Resources Division of the United States Department of Justice, Defendant, and Defendant's counsel. This agreement cannot be modified except in a written document signed by all parties. If an addendum to this agreement has been properly executed, it is incorporated herein by reference.

ADAM R.F. GUSTAFSON
ACTING ASSISTANT ATTORNEY GENERAL
ENVIRONMENT and NATURAL RESOURCES DIVISION

DATE: April 8, 2025   By: /s/ Thomas T. Ballantine   2025.04.08 18:53:42 -04'00'

THOMAS T. BALLANTINE
Assistant Section Chief
California Bar. 208193
Environmental Crimes Section
Environment & Natural Resources Division
4 Constitution Square
150 M Street, NE, Suite 4.204
Washington, DC 20044

CHRISTOPHER J. COSTANTINI
Senior Trial Attorney

10

                           Pennsylvania Bar No. 64146
                           Environmental Crimes Section
                           Environment & Natural Resources Division
                           4 Constitution Square
                           150 M Street, NE, Suite 4.212
                           Washington, DC 20044

                           MARK T. ROMLEY
                           Trial Attorney
                           California Bar No. 240655
                           Environmental Crimes Section
                           Environment & Natural Resources Division
                           999 18th Street, Suite 370, South Terrace
                           Denver, CO 80202

We are counsel for Defendant, AGHORN OPERATING INC. in this case. We have fully explained to Defendant all of Defendant's rights with respect to the pending criminal charges. We have carefully reviewed this plea agreement in its entirety with Defendant and provided Defendant with our best professional advice. In our opinion, Defendant's decision to enter into this plea agreement is made freely, voluntarily, and with full knowledge of its obligations and consequences.

DATE:_____, 20\_\_\_\_

                           _____
                           DAVID GERGER
                           Texas Bar No. 07816360
                           dgerger@ghmfirm.com
                           MATT HENNESSY
                           Texas Bar No. 00787677
                           mhennessy@ghmfirm.com
                           GERGER HENNESSY MARTIN &
                           PETERSON LLP
                           700 Louisiana, Suite 2300
                           Houston, Texas 77002
                           713.224.4400 – Telephone

                           MARLA THOMPSON POIROT
                           Texas Bar No. 00794736
                           marla@poirotlaw.com
                           THE POIROT LAW FIRM, PLLC
                           PO Box 25246
                           Houston, Texas 77265
                           713.816.1660 – Telephone

                           Attorneys for Defendant

I, _____, have carefully read and reviewed the entirety of this plea agreement, or it has been read to me and reviewed with me by Defendant's attorneys. After careful consideration and discussion with Defendant's attorneys and fully understanding Defendant's rights with respect to the pending criminal charges, as an authorized representative of Defendant, I freely and voluntarily agree to the specific terms and conditions of the plea agreement.

DATE:_____, 20____        _____
                                     NAME


                                     _____
                                     TITLE
                                     Authorized Representative of Defendant

**ATTACHMENT A**

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> v.  § <br> § <br> AGHORN OPERATING, INC. (1) § <br> TRENT DAY (2), § <br> § <br> Defendants. § <br> § | CRIMINAL NO. 7:22-CR-49 |

## CRIMINAL INFORMATION

THE UNITED STATES CHARGES:

### PARTIES

1.  Defendant Aghorn Operating, Inc. ("Aghorn"), is incorporated in Texas and has a principal office in Odessa, Texas. Aghorn operates oil wells, leases, and associated facilities, including the "Foster D Section 8 Waterflood Station" (the "Station") in the Western District of Texas.

2.  Defendant Trent Day is the Vice President of Aghorn.

### REGULATORY AND STATUTORY OVERVIEW

3.  Section 113(c)(4) of the Clean Air Act imposes criminal penalties for the negligent release into the ambient air of any extremely hazardous substance listed under the Clean Air Act that negligently places another person in imminent danger of death or serious bodily injury. 42 U.S.C. § 7413(c)(4).

4. Hydrogen sulfide has been identified by Congress as an extremely hazardous substance and is listed under the Clean Air Act. 42 U.S.C. § 11002(a)(2).

## COUNT ONE
## 42 U.S.C. § 7413(c)(4)
## (Negligent Endangerment)

5. On various dates, including on or about October 26, 2019, in the Western District of Texas, the Defendants,

AGHORN OPERATING, INC., and TRENT DAY,

negligently released into the ambient air an extremely hazardous substance, to wit: hydrogen sulfide, from the Station, negligently placing another person in imminent danger of death or serious bodily injury.

A violation of Title 42, United States Code, Section 7413(c)(5), and Title 18, United States Code, Section 2.

Dated: March __, 2025         Respectfully submitted,

Adam R.F. Gustafson
ACTING ASSISTANT ATTORNEY GENERAL
ENVIRONMENT and NATURAL
RESOURCES DIVISION

By: /s/ Thomas T. Ballantine
THOMAS T. BALLANTINE
Assistant Section Chief
California Bar. 208193
Environmental Crimes Section

2

Environment & Natural Resources Division
4 Constitution Square
150 M Street, NE, Suite 4.204
Washington, DC 20044

By: /s/ Christopher J. Costantini
CHRISTOPHER J. COSTANTINI
Senior Trial Attorney
Pennsylvania Bar No. 64146
Environmental Crimes Section
Environment & Natural Resources Division
4 Constitution Square
150 M Street, NE, Suite 4.212
Washington, DC 20044

By: /s/ Mark T. Romley
MARK T. ROMLEY
Trial Attorney
California Bar No. 240655
Environmental Crimes Section
Environment & Natural Resources Division
999 18th Street, Ste 370, South Terrace
Denver, CO 80202

**ATTACHMENT B**

**<u>List of Oil Production Facilities Where Aghorn Ensures Operational Stationary Monitors</u>**

1. Section 8 (Foster D) water flood station
2. Foster D battery
3. Foster C battery
4. Gist Unit water flood station
5. Gist Unit central battery
6. Gist Unit satellite batteries 1, 2, 3, 4, 5, 6 and 14
7. Gist Unit well nos. 19, 42, 83, 101, 137 and 149
8. East Harper Unit central battery
9. Cowden 13G battery
10. Cowden 14G battery
11. Emmons Unit injection station
12. Moss Unit central battery
13. Moss Ranch 44 battery and flare
14. Gist A battery
15. Gist A well no. 9
16. Gist B and C battery
17. Gist et al. battery
18. Gist et al. well nos. 1, 2, 4, 5, and 6
19. Foster Johnson Unit satellite batteries 3 and 17
20. J.E. Bagley battery